IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES SMITH, :
:
    Plaintiff, :
: No. 4:CV-08-1284
v. :
: (Judge McClure)
CHARLES NORRIS, :
:
:
    Defendant. :

**MEMORANDUM**[1]

December 18, 2009

## I. INTRODUCTION

This civil rights action filed under the Civil Rights Act of 1871, 42 U.S.C. § 1983, was initiated by James Smith, the plaintiff in this case. Smith is currently incarcerated in a Pennsylvania state correctional institution. On July 7, 2008, Smith filed with this Court a complaint against Charles Norris, a now retired corrections officer at the State Correctional Institution at Rockview, Pennsylvania

---

[1] Some of the information relied upon by this Court's order references documentation sealed in accordance with the parties' confidentiality agreement; however, this memorandum and the accompanying order are not sealed. We have balanced the litigants' privacy interest against the public's right to obtain information concerning judicial proceedings, and have determined that the public interest outweighs the litigants' privacy interests. This memorandum and the accompanying order will not be sealed. See generally Pansy v. Borough of Stroudsburg, et. al., 23 F.3d 772 (3d Cir. 1994).

("SCI-Rockview").  (Rec. Doc. No. 1).

## II. PROCEDURAL HISTORY

In his complaint, Smith asserts that Officer Norris, then a corrections officer at SCI-Rockview, violated Smith's Eighth Amendment right to be free from cruel and unusual punishment when Officer Norris handcuffed Smith during transport to Rockview after Smith had undergone surgery on his rotator cuff.  Smith is seeking from Officer Norris both compensatory and punitive damages.

On September 23, 2008, Officer Norris filed an answer to Smith's complaint.  (Rec. Doc. No. 5).  Almost a year later, on August 19, 2009, Officer Norris filed a motion for summary judgment.  (Rec. Doc. No. 13).  On August 31, 2009, Officer Norris filed the requisite statement of material facts (Rec. Doc. No. 14) and brief in support of his motion for summary judgment (Rec. Doc. No. 15).

Smith filed a brief in opposition to Officer Norris's motion for summary judgment on September 28, 2009.  (Rec. Doc. No. 18).  Attachment 1 to Smith's brief was his statement of material facts, filed pursuant to Middle District Local Rule 56.1.  (Rec. Doc. No. 18-2).  Officer Norris filed a reply brief on October 15, 2009.  (Rec. Doc. No. 25).  Therefore, the matter is now ripe for disposition.

Now, for the following reasons, we will deny Officer Norris's motion for summary judgment.

## III. FACTUAL BACKGROUND

Taken in the light most favorable to the non-moving party, plaintiff Smith, the facts are as follows. Currently, Smith, who has been incarcerated based on a homicide in the second degree conviction, is serving a life sentence in a Pennsylvania state correctional institution. At the time of the incident at issue in this case, Smith was imprisoned at SCI-Rockview.

In January of 2006, Smith injured his right shoulder while weight-lifting approximately 400 pounds. A subsequent MRI evidenced a complete tear of the supraspinatus tendon, or rotator cuff, located in Smith's right shoulder. Surgery was recommended to repair the tear. In light of this recommendation, prison officials transported Smith to the State Correctional Institution at Somerset ("SCI-Somerset") in October 2006 for Smith to have surgery on his rotator cuff.

Smith obtained surgery on his rotator cuff on October 11, 2006. On October 17, 2006, prison officials transported Smith back to SCI-Rockview from SCI-Somerset, with a stop in between at the State Correctional Institution at Smithfield ("SCI-Smithfield"). Smith began his trip from SCI-Somerset at 8:00 or 9:00 a.m.,[2] at which time his right arm was in a harness with a sling, which

---

[2] While the plaintiff and defendant disagree as to whether Smith left SCI-Somerset with paperwork regarding his medical condition, plaintiff notes that these records, even if they had accompanied him, would have been sealed.

plaintiff refers to as a "shoulder immobilizer."³ Smith also alleges that he had a bandage on his shoulder that was about four inches tall and four inches wide. According to Smith, Nurse Terrance Riffle informed those corrections officers responsible for transporting the prisoners from SCI-Somerset to SCI-Rockview that the arms of those prisoners wearing shoulder immobilizers should not be restrained. Defendant points to Nurse Riffle's own testimony, in which he stated that he did not recall Smith and could not say whether he gave any such instructions to corrections officers transporting the plaintiff. For the part of the trip from SCI-Somerset to SCI-Smithfield, Smith's right arm was left unrestrained,

---

Plaintiff claims that his doctor had written on a DOC form, which plaintiff refers to as a Consultation Record, "Do not remove immobilizer!" (Rec. Doc. No. 18-2 at 5). Plaintiff notes, however, that corrections officers involved in a routine transport of inmates would only receive as paperwork a body receipt and a van trip sheet, which contains no information as to the medical condition of the inmate being transported.

³ In his statement of facts, plaintiff describes in significant detail the appearance and components of this shoulder immobilizer, which he was to wear for four weeks. Plaintiff notes that the device apparently is made up of two pieces: a sling with a neck strap that supports the arm and a "hard pad or cushion that holds the arm away from the body" that is three to five inches in length. (Rec. Doc. No. 18-2 at 4). While the cushion is attached to a strap around the individual's waist, the sling is attached to the cushion by velcro. In light of the above, the plaintiff claims that his right arm was bent at a 90 degree angle, with his forearm positioned at a perpendicular angle as to his torso. In plaintiff's case, the rigidity of the shoulder immobilizer was necessary for the sutures to keep the repaired rotator cuff in place, allowing the tendon to heal.

4

with his jumpsuit hanging over his shoulder.

During the stop at SCI-Smithfield, Smith was detained with other inmates in a holding cell at SCI-Smithfield for about an hour, after which officials were ready to transport Smith and other prisoners to SCI-Rockview. Officer Norris, as well as at least one other prison official, Corrections Officer Michael Guenot, were responsible for transporting Smith and the other inmates from SCI-Smithfield to SCI-Rockview. Smith and the other inmates being transported were searched by Officer Norris and another corrections officer; these officers also placed Smith and the other inmates in restraining hardware that plaintiff denies was customary. Uncontested is the fact that neither a superior officer nor the control center for the institution had informed Officer Norris, via a special order or any medical precautions, that the corrections officers should deviate from those procedures normally used in handcuffing and shackling inmates being transported on October 17, 2006.

While Officer Norris claims that "[t]he only person who told plaintiff anything about plaintiff's shoulder was plaintiff himself"[4] (Rec. Doc. No. 14 at 3),

---

[4] It appears that the defendant may have intended to state that the only individual who informed <u>the</u> <u>defendant</u> anything about plaintiff's shoulder was the plaintiff. In fact, the defendant stated in his brief supporting his motion for summary judgment that "[t]he only person who told plaintiff anything about plaintiff's medical condition was plaintiff himself. In this regard, plaintiff

5

plaintiff claims that William Bowen, another corrections officer, did inform Officer Norris as to Smith's medical condition. It is uncontested that Smith conveyed to Officer Norris his belief that he should not be restrained. Smith additionally claims, though, that before he was restrained, and after Officer Norris had asked him about his shoulder, Smith had informed Officer Norris that he had recently undergone surgery on his shoulder, that two other prisoners also had shoulder immobilizers, and that medical records existed indicating that corrections officers were not to handcuff or restrain his right arm.[5]

Officer Norris claims that, when asked, the plaintiff indicated that he did not have on his person any medical paperwork indicating that his right arm should not be restrained. Smith, though, claims that he did in fact have medical paperwork with him. Officer Norris states that the "usual procedure" was used in restraining Smith by handcuffing Smith in front with his waist chain and leg shackles. (Rec. Doc. No. 14 at 3). However, Smith contends that, under the circumstances, these procedures actually were not usual. Smith also claims that Officer Norris, prior to

---

informed <u>Mr. Norris</u> that he believed he should not be restrained." (Rec. Doc. No. 15 at 3) (emphasis added).

[5] The parties appear to dispute whether the shoulder immobilizer, in this case, was or should have been obvious to defendant Norris; in fact, Norris has testified that he only noticed "a bandage or something on [Smith's] upper shoulder." (Rec. Doc. No. 25-4 at 4).

6

handcuffing and restraining his arm, stated, "You're getting it." (Rec. Doc. No. 18-2 at 8).[6] While Smith denies Officer Norris's claim that he said nothing after he was handcuffed and shackled, Smith has failed to support this denial with a citation to the record; as such, we will consider this claim by Officer Norris to be admitted for the purposes of the instant motion for summary judgment.[7]

According to Smith, when his right arm was pulled to the center of his body by Officer Norris so as to be handcuffed and attached to the chain around his waist, he felt a sharp pain in his shoulder. Smith has described this pain as being similar to a pop; after this initial pain, Smith says that "pain radiated down into his armpit area and down his right arm." (Rec. Doc. No. 18-2 at 8). Smith claims that he experienced pain on the rest of the trip to SCI-Rockview and afterward.

After Smith was handcuffed and shackled, Smith and the other inmates being transported to SCI-Rockview were placed in a van for transport back to that facility. Smith subsequently began physical therapy related to the rotator cuff in his right shoulder; he claims to have continued this therapy upon his transfer to

---

[6] Plaintiff states that Officer Norris contacted neither a shift commander nor a supervisor prior to restraining Smith for the trip from SCI-Smithfield to SCI-Rockview.

[7] For the purposes of summary judgment, both parties are required to "include references to the parts of the record that support the statements." See M.D. Pa. L.R. 56.1.

7

SCI-Somerset in December of 2006. After a two week stay at SCI-Somerset, Smith was then transferred to the State Correctional Institution at Laurel Highlands, where he remained until August of 2008.

While in post-surgery treatment at the end of 2006 through 2007, Smith states that he informed his doctor as to the manner in which his right arm was restrained in his transport on October 17, 2006. His doctor advised him that he may have injured his rotator cuff.

After an MRI taken on March 23, 2007 showed a partial tear to his rotator cuff in his right shoulder, Smith underwent a second surgery on his right shoulder on August 16, 2007. Plaintiff claims that, while the MRI indicated there was only a partial tear to the rotator cuff, a complete full tear actually was discovered upon surgery.

Officer Norris has stated that standard restraining methods may be deviated from based upon the medical condition of the prisoner. Smith claims that these situations include when leg shackles will not fit because of swelling, when an inmate has a cast because of a broken arm or leg, when an inmate is in a wheel chair, or when an inmate has a prosthetic arm or leg. Corrections Officer Guenot has stated that, instead of using standard restraining mechanisms, such as handcuffs, a black box, or a waist chain, a corrections officer may use a restraint

8

such as a zip strap, flex cuff, or leather restraint. Corrections Officer William O. Bowen, Jr. also noted in a deposition that, for example, an inmate's waist chain may be loosened if the inmate's arm is immobilized. In addition, Smith has pointed to evidence, in the form of Officer Norris's deposition testimony, that a corrections officer may contact a shift commander or captain to seek a change in the standard procedure for the restraint of an inmate. In fact, at his deposition, Corrections Officer Guenot testified that this was a relatively common occurrence.

According to plaintiff, another prisoner who was transported from SCI-Somerset with Smith, and who was also wearing a shoulder immobilizer, was James Milliner. Prior to Milliner's departing from SCI-Smithfield, Milliner apparently made a corrections officer aware of his recent surgery and that his arm that had been immobilized should not be restrained. According to Milliner, the corrections officer did not restrain his immobilized arm for the return trip.

## IV. STANDARD OF REVIEW

Summary judgment is appropriate when 1) there are no material facts in dispute; and 2) one party is entitled to judgment as a matter of law. See Int'l Union, United Mine Workers of Am. v. Racho Trucking Co., 897 F.2d 1248, 1252 (3d Cir. 1990) (citing Fed. R. Civ. Pro. 56(c)).

A district court may properly grant a motion for summary judgment when

9

"the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit. Id.; Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted). To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show "'that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). More simply put, a party moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim, but only point out a lack of evidence sufficient to support the nonmovant's

claim.  Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1991).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that an issue of material fact remains.  Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements; rather, the party must point to specific evidence in the record that creates a genuine issue as to a material fact.  Celotex, 477 U.S. at 32; Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

**V.  DISCUSSION**

In support of his motion for summary judgment, the defendant claims that the facts are undisputed that he was not deliberately indifferent to the health or safety of Smith.  On the other hand, the plaintiff claims that Norris was in fact deliberately indifferent to Smith's health and safety in violation of the Eighth Amendment.

### A.  The Deliberate Indifference Standard

Pursuant to Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)), "deliberate indifference to serious medical

11

needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." (internal citations omitted). The Court in Estelle went on to note that "prison guards intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed" will also be considered deliberate indifference. Id. at 104-105. While the parties agree that the plaintiff's medical condition in October of 2006 after surgery on his rotator cuff was a serious medical need under Estelle, the parties disagree as to whether defendant Norris was deliberately indifferent to that need.

The key issue in determining whether an official's actions constitute deliberate indifference is the actual knowledge of the defendant. According to the Supreme Court,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health or safety</u>; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) (emphasis added). As the defendant correctly points out, this test is a subjective, and not objective, one. Therefore, the actual knowledge of the defendant is paramount. The subjective knowledge of the defendant, though, "can be proved by circumstantial evidence to the effect that the

excessive risk was so obvious that the official must have known of the risk."
Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842).

### B. Whether Norris was Deliberately Indifferent to Plaintiff's Medical Needs

Defendant contends that plaintiff is incapable of showing that Officer Norris knew of and disregarded an excessive risk to Smith's health or safety. As support, the defendant points to the undisputed fact that he did not have any access to paperwork indicating Smith's medical condition and that Norris did not receive any special order or medical precautions regarding the transportation of Smith. Also, Officer Norris, who is not medically-trained, notes that Smith was the only individual who informed him about Smith's shoulder and that, when he asked Smith for paperwork indicating that Smith should not be handcuffed, Smith did not have such paperwork.

Smith contends, on the other hand, that Officer Norris was in fact deliberately indifferent to his serious medical needs. Smith argues that, even if Officer Norris was not aware of a medical order, the corrections officer was aware of facts such that he had received adequate notice as to the excessive risk to the health or safety of Smith if Smith's right arm were to be restrained under standard procedures.

Under the circumstances, we agree with plaintiff that there remains a genuine issue of material fact as to whether Officer Norris was deliberately indifferent to Smith's serious medical needs. As such, we will deny the defendant's motion for summary judgment. The defendant makes much of the fact that he did not have access to orders or paperwork indicating that an exception to standard restraint procedures was warranted. However, the plaintiff has come forth with evidence indicating that a corrections officer responsible for a routine transport would only have access to a body receipt and a van trip sheet; in fact, any medical records that might accompany an inmate on the trip would be sealed. In addition, there is evidence that it is not out of the ordinary for a corrections officer to discover, upon arrival at a location to transport an inmate, that the inmate has an obvious medical condition such as, for example, being confined to a wheelchair. Therefore, corrections officers transporting prisoners have to use their own judgment when confronted with atypical transport scenarios.

Even assuming, however, that Officer Norris was not provided with any special orders, medical precautions, or other paperwork, much remains in dispute as to whether Officer Norris was deliberately indifferent to Smith's serious medical needs. Officer Norris concedes that plaintiff did indicate that he believed he should not be restrained. However, Smith also has pointed to facts supporting

14

that he informed Officer Norris he had recently had shoulder surgery.  In addition, there is evidence that Smith was wearing a shoulder immobilizer, though Officer Norris denies that, if the plaintiff was in fact wearing a shoulder immobilizer, this immobilizer would have been obvious to the defendant.  At the very least, then, there remains a genuine dispute as to the obviousness of the immobilizer, assuming Smith was wearing one.  The obviousness of this immobilzer is relevant to the reasonableness of Officer Norris's failure to accommodate Smith's request to leave his right arm unrestrained.  In addition, Smith has also pointed to evidence indicating that Officer William Bowen may have informed Officer Norris as to Smith's medical condition.

We believe that, in light of the above, there remains a genuine dispute of material fact as to whether Officer Norris was deliberately indifferent to the serious medical needs of Smith.  The test that the plaintiff must meet is to show that Officer Norris knew of and disregarded "an excessive risk" to Smith's health or safety.  Farmer, 511 U.S. at 837.  First, the plaintiff has alleged facts sufficient to raise a genuine issue as to what Officer Norris was aware of just prior to handcuffing and restraining Smith on October 17, 2009.  Second, plaintiff has pled facts sufficient to create a genuine issue as to whether Officer Norris drew the inference that a substantial risk of serious harm in fact existed.

15

This second conclusion is especially true in light of the fact that plaintiff may prove the subjective knowledge of the official by circumstantial evidence, i.e. by proving "that the excessive risk was so obvious that the official must have known of the risk." Whetzel, 256 F.3d at 133. We believe that, taking the facts pled in the light most favorable to the plaintiff, the plaintiff has pled facts sufficient to create a genuine issue as to whether the risk to Smith was so excessive that Officer Norris must have known of it. After all, plaintiff has pointed to the fact that he was wearing a shoulder immobilzer, that he informed Officer Norris of his recent surgery and that his right arm was not to be restrained, and that Officer Norris was able to contact a supervisor or captain to request authorization to restrain Smith in a way more conducive to the inmate's medical needs. Plaintiff has pointed to evidence showing that such a request was not out of the ordinary. In light of the above, then, we conclude that there remains a genuine issue of material fact and that the defendant's motion should therefore be denied.

## VI.  CONCLUSION

For the reasons stated above, we find that defendant Charles Norris is not entitled to summary judgment.  Therefore, we will deny the defendant's motion for summary judgment.

　s/ James F. McClure, Jr.　　　　
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES SMITH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 4:CV-08-1284 |
| v. | : | |
| | : | (Judge McClure) |
| CHARLES NORRIS, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**O R D E R**

December 18 2009

For the reasons set forth in the accompanying memorandum,

**IT IS HEREBY ORDERED THAT:**

1. Defendant's motion for summary judgment (Rec. Doc. No. 13) is denied.

2. A further case management conference by telephone conference call will be held on January 12, 2010, at 2:00 p.m., to schedule further proceedings. Defendant shall be responsible for initiating the call. Chambers number is 570-323-9772).

            s / James F. McClure, Jr.
            James F. McClure, Jr.
            United States District Judge